# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# NORTHERN DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY**, a Delaware corporation,<br><br>   Plaintiff,<br>vs.<br><br>**HARSAC, INC.**, a dissolved Utah corporation; and **ALAN Z. SACHTER**, an individual,<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:12CV168 DAK |
| **HARSAC, INC.**, a dissolved Utah corportion,<br><br>   Couterclaimant,<br>vs.<br><br>**UNION PACIFIC RAILROAD COMPANY**, a Delaware corporation,<br><br>   Counterclaim Defendant. | |

   This matter is before the court on Plaintiff/Counterclaim Defendant Union Pacific Railroad Company's ("Union Pacific") Motion for Partial Summary Judgment. A hearing on the motion was held on March 13, 2014. At the hearing, Union Pacific was represented by Carolyn Montgomery and Benjamin Peter Harmon. Defendant Alan Z. Sachter ("Mr. Sachter") was represented by R. Stephen Marshall. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under

advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following Memorandum Decision and Order, finding that Mr. Sachter is personally liable for any damages Union Pacific suffered as a result of any breach of a lease agreement between Harsac, Inc. ("Harsac") and Union Pacific.

## I. BACKGROUND

In this lawsuit, Union Pacific has sued Harsac and Mr. Sachter (collectively referred to as "Defendants") for alleged breaches of a lease agreement. On or about July 20, 1995, Union Pacific, as lessor, and Harsac, as lessee, entered into a Lease of Property (the "Lease") for certain real property located at approximately 2550 Pacific Avenue in Ogden, Utah (the "Premises"). Harsac conducted its cold storage business at the Premises from July 1995 through the end of 2011. The Premises were vacated sometime in late 2011.

According to Union Pacific, Harsac did not pay the annual rent of $11,135. 00 for the 2012 term of the Lease, which was due on October 1, 2011. Union Pacific asserts that it sent a letter to Harsac and Mr. Sachter, the president of Harsac, dated February 8, 2012, providing formal notice of the payment default and the 30-day cure period allowed by the Lease. The payment default allegedly was not cured and the Lease terminated at the conclusion of the 30-day cure period. Union Pacific also claims that Harsac failed to remove certain structures from the Premises, as required by the Lease, and that the cost to remove or demolish the structures will be over $400,000. Union Pacific's Complaint also alleges that Mr. Sachter is personally liable for the damages caused by the breach of the Lease because he was an officer and director of Harsac, and he continued to operate the Harsac business after the corporation was administratively dissolved.

Defendants have asserted a Counterclaim against Union Pacific, asserting, among other things, that the structures at issue belonged to Union Pacific at the execution of the Lease and that Harsac was not obligated to remove the structures from the Premises. Defendants also claim that Union Pacific was on actual and constructive notice that Harsac did not intend to renew the Lease beyond September 30, 2011.[1]

In the instant motion, Union Pacific seeks summary judgment on the issue of Mr. Sachter's personal liability because, Union Pacific contends, there are no genuine issues of any material fact concerning Harsac's dissolution, the continuation of its business operations by Mr. Sachter, and Mr. Sachter's status as an officer and director of Harsac. Mr. Sachter contends, however, that under Utah law, he is not personally liable.

## II. UNDISPUTED FACTS

Harsac, a Utah corporation, and Union Pacific entered into the Lease in 1995. The Lease continued in effect until at least the time the Premises were vacated in late 2011. Harsac was administratively dissolved on June 7, 2007, for failure to file an annual report. Harsac conducted a cold storage warehouse business on the Premises from before the inception of the Lease in 1995 through the date of Harsac's dissolution in 2007. After Harsac's dissolution, Mr. Sachter continued to operate the cold storage warehouse business at the same site and in the same manner through the end of 2011.

Mr. Sachter was the president of Harsac since 2002 and was a member of Harsac's Board of Directors since at least 2002. Mr. Sachter caused regular lease payments to be made to Union

---

[1] *See* Answer and Counterclaim, Docket No. 12

Pacific for each annual term of the Lease, including the term ending on September 30, 2011. In May 2010, Mr. Sachter incorporated a new entity named Harsac, Inc., but the original Harsac entity was never reinstated.

Mr. Sachter has provided an affidavit in which he explains that he was an original shareholder of Harsac when it was incorporated in 1979.[2] In the 1980s, he acquired an additional 25% ownership interest. Harsac was operated by Mr. Sachter's father, Paul D. Sachter, until his death in 2002. The father had made all decisions regarding the company and operated it on a day-to-day basis. When his father passed away, Mr. Alan Sachter took over and managed the company going forward. Mr. Sachter claims that, in approximately May 2010, he learned that Harsac had been administratively dissolved in 2007. He claims that the failure to file an annual report occurred through an oversight, and he does not recall receiving a notice from the State that the annual renewal was due. After learning that Harsac had been administratively dissolved, Mr. Sachter asserts that he believed that he would be able to reinstate the company by filing papers with the State of Utah and by paying the annual fee. He filled out a form online and sent a fee to the State of Utah. In doing so, he asserts that he believed that he had caused Harsac to be reinstated and to be in good standing. From that point until after this lawsuit was filed, he believed that Harsac had been successfully reinstated. He understands now that, rather than reinstating the original Harsac by the filing of the on-line form, a second, new corporation with the same name, Harsac, Inc., was created ("Harsac II").

---

[2] Union Pacific has not disputed the statements set forth in Mr. Sachter's affidavit, and thus, they are presumed to be undisputed for purposes of the instant Motion for Partial Summary Judgment.

## III. DISCUSSION

The question at issue in the instant motion is whether, under Utah law, corporate officers and directors who continue the business of a suspended and, ultimately, dissolved corporation are personally liable for the debts and liabilities arising from the business operations that are a continuation of the types of activities the corporation performed.

Not long ago, the Utah Business Corporation Act (the "UBCA") and the case law interpreting it left no doubt that the answer to this question was "yes." *See Steenblik v. Lichfield*, 906 P .2d 872, 878 (Utah 1995). But in 1992, the Utah legislature repealed these statutes and enacted the Utah Revised Business Corporation Act (the "Revised Utah Act"), which was based on the Revised Model Business Corporation Act (the "RMBCA"). The relevant statutory language of the Revised Utah Act–which is admittedly less clear than language contained in the UBCA–has created uncertainty about whether–and under what circumstances– corporate officers and directors who continue the business of a suspended and, ultimately, dissolved corporation may be held personally liable.[3]

**A. Background**

Under Utah law, if a corporation does not comply with certain statutory requirements, i.e., the filing of annual reports or the timely payment of taxes, fees or penalties, the Division of

---

[3] Previously, the language read: "All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." Utah Code Ann. § 16-10-139 (repealed 1992).

The relevant language of the Revised Utah Act reads: "All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting." Utah Code Ann.§ 16-10a-204 (1992).

5

Corporations and Commercial Code (the "Division") provides notice to the corporation of these grounds for dissolution. Utah Code Ann. § 16-10a-1421(1)(a). If the corporation does not correct each ground for dissolution within 60 days of the mailing of the notice, the Division must administratively dissolve the corporation. *Id*. § 16-10a-1421(2)(a). Although an administratively dissolved corporation continues in existence, it may not carry on any business other than that necessary to wind up and liquidate its business and affairs. *Id*. § 16-10a-1421(3)(a).

Utah law provides a generous time period for correcting any oversights or incorrect filings that may have resulted in the administrative dissolution of a corporation. A dissolved corporation may complete an application for reinstatement and file it with the Division within two years after the effective date of the dissolution. *Id*. § 16-10a-1422(1). If a corporation is reinstated, the business conducted by the corporation during the period of administrative dissolution is unaffected by the dissolution. *Id*. § 16-10a-1421(3)(b).

In *Steenblik v. Lichfield*, 906 P.2d 872, 878 (Utah 1995), the Utah Supreme Court addressed whether the general rule holding personally liable a person who purports to act for and on behalf of a corporation that has no corporate authority applied where a corporation's authority had been suspended. *Id.* at 877. The statutory language at issue in *Steenblik* was the now-repealed language of UBCA § 15-10-139, which provided:

> All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

Utah Code Ann. § 16-10-139 (repealed 1992). The *Steenblik* Court noted that Section 16-10-139 was a "codification of general corporation law that holds promoters personally liable as

6

partners for preincorporation debts and obligations." *Id*. at 877. The Court recognized that there was a "split of authority as to whether personal liability as provided by the general rule embodied in § 16-10-139 applies when a corporation's authority is suspended or whether its application is limited to preincoroporation activities." *Id*. The Court then considered both the minority position at the time (*i.e*, individuals are not liable for corporate obligations incurred while the corporation is suspended) and the majority position (*i.e.*, corporate officers are personally liable for continuing the business while the corporation is suspended) and concluded that "the reasoning that supports the majority rule is persuasive." *Id*. at 877-78. Therefore, it found that "persons who act as if pursuant to valid corporate authority, after that authority has been suspended, are personally responsible for liabilities arising from the continued operations." *Id*. at 878.

In reaching its conclusion, the *Steenblik* court cited with approval a case decided two years earlier by the Utah Court of Appeals, *Murphy v. Crosland*, 886 P.2d 74 (Utah Ct. App. 1994), *aff'd*, 915 P.2d 491 (Utah 1996).[4] In *Murphy*, the Utah Court of Appeals traced the development of corporation law from the common law through various iterations of the Business Corporation Act, with particular attention to how that law imposed personal liability on officers, directors, and shareholders in certain situations. After analyzing case law and the official comments to the Model business Corporation Act, the Murphy court concluded that the "UBCA section 16-10-139 applies to those who assume to act as or on behalf of a corporation without

---

[4] Although *Steenblik* was decided in 1995 and *Murphy* was decided in 1994–after the UBCA was repealed–the respective courts considered the law in place at the time of the relevant conduct, which, in both cases, occurred prior to 1992, when the Utah legislature enacted the Revised Utah Act.

authority to conduct business, either because it has not been properly incorporated or because its authority has been suspended." *Id*. at 82.

Thus, while the law was clearly established under the UBCA, in 1992, the Utah Legislature repealed Section 16-10-139, along with the rest of the UBCA, and enacted the Revised Utah Act, which was based upon the RMBCA. *See Miller v. Celebration Mining Co*., 29 P.3d 1231 (Utah 2001). The new provision that corresponds to Section 16-10-139 of the URBCA reads:

> All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting.

Utah Code Ann.§ 16-10a-204 (1992) ("Section 204"). This section was adopted without modification from Section 2.04 of the RMBCA. The title of this provision is "Liability for precincorporation transactions."

**B. The Parties' Arguments Regarding the Current State of the Law**

Despite the change in language, according to Union Pacific, the *Steenblik* and *Crosland* courts' analyses are nonetheless instructive. Union Pacific argues that there is nothing to suggest that the change in numbering or the "slight change in language"[5] of Section 204 was intended to alter the underlying policy or applicability of former section 16-10-139. Thus, Union Pacific argues, the Revised Utah Act still mandates personal liability for officers and directors who continue business as usual after the dissolution of a corporation. Therefore, according to Union

---

[5] The "slight change in language" refers to the phrase "knowing there was no incorporation under this chapter." As discussed below, Defendants contend this change is significant.

8

Pacific, the current statutory scheme requires the same result that was mandated under the former law of *Steenblik* and *Crosland*.

Defendants argue, on the other hand, that, unlike its predecessor, which Utah courts construed as applying to liabilities that arose following the suspension of a corporation, the new statute is limited to liabilities that arose prior to incorporation resulting from the conduct of a person who knew that no incorporation had taken place. On its face, they argue, Section 204, which is entitled "Liability for *preincorporation* transactions," does not apply in the present case. Under Utah law, a corporation that has been dissolved "continues its corporate existence," Utah Code Ann. § 16-10a-1421(3)(a). According to Defendants, the term "no incorporation under this chapter," as used in Section 204, cannot refer to a dissolved corporation because a dissolved corporation continues in existence even after its dissolution.[6] Thus, Defendants argue, Section 204 does not apply in the present case, nor do the cases of *Steenblick or Murphy*, which construed the prior statute.

Moreover, Defendants contend, even if the court somehow determined that this statute applied in the present case, there is now a knowledge requirement as an element of a claim, and, they argue, Union Pacific has not set forth any evidence that Mr. Sachter knew that Harsac was dissolved, and, in fact, he has submitted an affidavit stating that he had no such knowledge. Accordingly, Defendants maintain, Union Pacific has not satisfied its burden on all elements of the statute and its motion must be denied.

---

[6] Under the Revised Utah Act, however, once a corporation is dissolved, and not reinstated within the two year window, it has no authority to act except for those actions necessary to wind up its affairs. Utah Code Ann. § 16-10a-1421(3)(a). It is undisputed that Mr. Sachter was not acting on behalf of Harsac to wind up its affairs.

9

### C. Analysis

*1. Does Section 204 Apply to Post-dissolution Activities?*

The court declines to interpret Section 204 as being limited to only preincorporation activities. If it were so limited, there would be no consequence under the Revised Utah Act for corporate officers and directors who continue the business of a suspended and, ultimately, dissolved corporation. It is unfathomable that the Utah legislature or the drafters of the RMBCA intended such a result.

The court's primary objective when interpreting statutes "is to give effect to the legislature's intent." *State v. Harker*, 240 P.3d 780, 784 (Utah 2010) (internal quotations and citations omitted). To discern legislative intent, the court first examines the plain language of the statute. *Id.* Additionally, the court reads "the plain language of [a] statute as a whole and interpret[s] its provisions in harmony with other statutes in the same chapter and related chapters." *Id*. (internal quotations and citations omitted).

While the title of this statute admittedly indicates that it applies to "preincorporation" activities, "a statute's title is not part of its text and cannot be used as a tool of statutory construction unless the statute's language is ambiguous." *Anderson Dev't Co. v. Tobias*, 116 P.3d 323, 336 (Utah 2005) (quoting *Stephens v. Bonneville Travel*, 935 P.2d 518, 521–22 (Utah 1997)). Thus, the court does not consider the title of this statute. In giving effect to the legislature's intent and viewing the Revised Utah Act as a whole, a statute which forbids an administratively dissolved corporation from carrying on any business other than that necessary to wind up and liquidate its business and affairs, *see* Utah Code Ann. § 16-10a-1421(3)(a), the court finds that the language of Section 204 is unambiguous. As the court stated in *Equipto Div.*

*Aurora Equip. Co. v. Yarmouth*, 950 P.2d 451, 455 (Wash. 1998), "[o]ne can act as a corporation, while knowing there was no incorporation, both before the corporation has come into existence *and* after the corporation ceases to exist." Moreover, even the Official Comments to Section 2.04 of the RMBCA state that:

> After a review of these situations, it seemed appropriate to impose liability only on persons who act as or on behalf of corporations ''knowing'' that no corporation exists.

REV. MODEL BUS. CORP. ACT § 2.04, official comment. Therefore, the court finds that section 2.04 of the Revised Utah Act imposes personal liability on all persons purporting to act as or on behalf of a corporation, knowing that no corporation exists.

Moreover, in *Express Recovery Servs., Inc. v. Rice*, 125 P.3d 108, 110 (Ut. Ct. App. 2005), a case decided after Utah adopted the Revised Utah Act, the Utah Court of Appeals specifically cited the *Murphy* case for the proposition that officers and directors are personally liable where a dissolved corporation continues business as usual. *Id*. ("By continuation of the business without contemplation of liquidation, the directors and officers are held personally responsible for contract and tort liability incurred during the period following dissolution") (citation omitted)).

Additionally, in *Miller v. Celebration Mining Co.*, the plaintiffs made the same argument that Union Pacific makes here--that, notwithstanding its title, Section 204 governs both pre- and post-dissolution liabilities.[7] 29 P.3d 1231 (Utah 2001). While the majority of the Court did not

---

[7] The issue was whether one of the plaintiffs who had acted for a dissolved corporation became a party to the agreement, enabling him to enforce its provisions on behalf of the plaintiffs. The trial court held that the agreement was void because the corporation had been administratively dissolved when the agreement was signed, and, therefore, could not validly enter

11

address Section 204, Chief Justice Howe dissented from a majority decision on the basis that the majority had improperly employed the common law to replace the Revised Utah Act. *Id.* at 1236. In analyzing Section 204, Justice Howe explained that, "although the title indicates preincorporation activity as the type of covered conduct, we have previously held that the predecessor to [Section 204], which was section 16-10-139 of the UBCA, also applied to post-dissolution situations."[8] *Id*.

Chief Justice Howe went on to find that the now-repealed Section 16-10-139 is not only somewhat similar to Section 204, as the trial court had noted, but that it is "the predecessor to Section 204." *Id*. Further, he stated that, "I would hold that the difference in the wording of [Section 204] is insufficient to warrant a different result from our decision in *Steenblik* that section 16-10-139 applied to post-dissolution agreements." *Id.* Chief Justice Howe drew support from a Washington Supreme Court case similar to the instant case. *Id*. at 1238.

In 1998, the Supreme Court of Washington considered the identical question and interpreted the Washington statute–with language identical to Utah's Section 204–to include post-dissolution activities. *Equipto Div. Aurora Equip. Co. v. Yarmouth*, 950 P.2d 451, 455 (Wash. 1998). The Washington Supreme Court determined that imposing liability on individuals who purport to act for a dissolved corporation was consistent with legislative history,

---

into the April 1994 agreement. The Utah Supreme Court affirmed the trial court's dismissal of the plaintiffs' action, finding that the parties' agreement was voidable at the defendants' option, and the defendants opted to void the agreement.

[8] Chief Justice Howe also noted that "[p]revious section 16-10-139 was entitled 'Unauthorized assumption of corporate power-Liability.' The official comment to the RMBCA offers no guidance as to the reasons behind the changes in the titles of the sections." *Id*. at n.1.

and it declined to "limit application of RCW 23B.02.040 exclusively to pre-incorporation situations." *Id.* at 455.

The Court in *Yarmouth* traced Washington's Section 204 to its predecessor statute, RCW 23A.44.100(1), which contains language identical to Utah's former law, repealed Section 16-10-139. After citing several cases, including *Steenblik,* that found that the predecessor statute applied to post-dissolution conduct, the Washington court found that it was reasonable to assume that the current version (Section 2.04) continued to impose personal liability in post-dissolution situations absent express language denoting such a shift. *Yarmouth*, 950 P.2d at 457 ("If the committee had planned on narrowing the scope of the liability rule to just pre-incorporation transactions, the official comment would have made some mention of such a substantial change").

The court finds the reasoning of *Yarmouth* persuasive and agrees with its conclusion that Section 204 is not limited to pre-incorporation activities, despite its title. Thus, Section 204 of the Revised Utah Act applies to the situation at issue in the instant case.

### 2. Did Mr. Sachter Know of Harsac's Dissolution?

Next, the court must address whether Mr. Sachter indeed possessed the requisite knowledge of Harsac's dissolution. While the court recognizes that Mr. Sachter's testimony that his failure to file an annual report was simply an oversight and that he believed he had reinstated Harsac when in fact he created a new and separate entity ("Harsac II"), the court finds that he had constructive knowledge of the dissolution.[9]

---

[9] The court finds that the knowledge requirement imposed by Section 2014 is satisfied by a finding of constructive knowledge.

13

Mr. Sachter had been a shareholder of Harsac since 1979. From at least 2002, he operated the company on a day-to-day basis, acting as the president of the company and also as a director. Moreover, Mr. Sachter had apparently properly and timely complied with those requirements from 2002 until 2007, and thus knew of the strict statutory requirement. Mr. Sachter has not presented any evidence to suggest that anyone else might have been responsible for filing the annual report.

Accepting Mr. Sachter's testimony as true, as the court must do, a reasonable jury could not conclude that Mr. Sachter, as the president and director of a closely held business, had no reason to know that his corporation had been dissolved. The court has reviewed the comments to the RMBCA regarding the knowledge requirement found in Section 2.04, and the factual situation in this case is not similar to the situations the RMBCA was trying to address when it adopted a knowledge requirement to protect those who genuinely had no idea that a corporation did not exist. The official comment to Section 2.04 of the RMBCA relates with dismay the many cases decided under the original Model Business Corporation Act where courts continued to recognize de facto and de jure corporations in order to shield persons from individual liability. REV. MODEL BUS. CORP. ACT § 2.04, official comment. A review of the comments reveals that the knowledge requirement of Section 2.04 is to provide a narrow, equitable exception, but to otherwise impose liability on parties who fail to take advantage of the simple and inexpensive process of creating and maintaining a corporation. *Id*.

*3. Alternatively, If Section 2.04 Does Not Apply, Is Mr. Sachter Liable?*

Finally, as an alternative basis for granting summary judgment, the court finds that, if Section 2.04 of the Utah Revised Business Incorporation Act does not control the resolution of

this case, then the common law strictly imposes personal liability on those individuals who continue to act under the guise of corporate protection when, in fact, none exists. If a corporation does not have authority to conduct business, either because it has not been properly incorporated or because its right to conduct business has been lost, then its agents are also without authority to act. *See Murphy v. Crosland*, 886 P.2d 74, 78 (Utah Ct. App. 1994) (discussion consequences of dissolution under the common law). Accordingly, if Section 2.04 does not apply, then the court finds that Mr. Sachter is personally liable under the common law.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Union Pacific's Motion for Partial Summary Judgment [Docket No. 27] is GRANTED. Accordingly, Mr. Sachter is personally liable for any damages that Union Pacific suffered as a result of any breaches of the Lease Agreement between Harsac and Union Pacific. This court, however, expresses no opinion regarding whether there has been a breach of the Lease Agreement or what damages have been suffered as a result of any breach. These issues remain for trial.

DATED this 2nd day of July, 2014.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge